DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| United States of America, ) | CASE NO. 1:06 CR 196 |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION |
| v. ) | ANALYZING THE SENTENCING |
| ) | FACTORS SET FORTH IN 18 U.S.C. § |
| Jay Michael Plotkin ) | 3553(a) |
| ) | |
| Defendant. ) | |

The Court has determined the offense level for the defendant is 12 and his criminal history is I calling for a sentencing range of six to 12 months in Zone B.[1] The Court sets forth its

---

[1] The defendant entered a plea of guilty to an information on June 27, 2006. The plea of guilty was pursuant to a written plea agreement in which the base offense level was listed as a 6 with an additional 8 levels for the loss amount for not more than $120,000.00. The plea of guilty was to the crime of health care fraud in violation of 18 U.S.C. Section 1347. As a part of the written plea agreement, the defendant reserved the right to argue that he was entitled to a two level reduction of the offense level pursuant to Section 5K2.13 based on diminished capacity. In support of the defendant's request for a two level reduction for diminished capacity, the defendant filed an extensive sentencing memorandum (Doc. No. 21) which was supported by a massive array of exhibits beginning with Exhibit A through Exhibit OO. Several of the exhibits included reports of Dr. Resnick and Dr. Goldberg who opined that the defendant did in fact suffer from diminished capacity, which in the opinion of the doctors contributed to the pattern and practice of the defendant in over billing his chiropractor patients. The government, at the request of the Court, filed an extensive sentencing memorandum which demonstrated the magnitude of the defendant's health care fraud. The government also filed a separate report advocating that the Court should order restitution to seven separate victims of the defendant's health care fraud in a total sum of $67,912.91. Even though the loss amount was arguably higher than $67,912.00, no other agency or insurance company had responded to the request for an order of restitution. It was against this background that the Court determined that the defendant was entitled to a two level reduction for diminished capacity thereby reducing the sentencing range to six to 12 months with the option that the Court require no more than home detention for six months.

(1:06 CR 196)

analysis of the sentencing factors required by *Booker* and the statutory guidance provided by 18 U.S.C. §3553(a) as follows:

**(a) Factors to be considered in imposing a sentence.**

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider -

**(1) The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The defendant pled guilty to one count of Health Care Fraud in violation of 18 U.S.C. § 1347. The offense conduct is set forth in paragraphs 8 thru 14 which state as follows.

> According to the Information, Plea Agreement and information provided by the Federal Bureau of Investigation, the following is known regarding this offense:
>
> At all time relevant, the defendant had been a chiropractor licensed by the State of Ohio, working at his practice at 14100 Cedar Road, Suite 220, University Heights, Ohio, since about August 24, 1999. He has been a participating provider with the Ohio Bureau of Workers Compensation and private insurance plans, all of which are health care benefit programs within the meaning of federal law. The chiropractor services for which he has claimed reimbursement are health care benefits, items or services within the meaning of federal law.
>
> The Ohio Bureau of Workers' Compensation (BWC) provides insurance to two thirds of Ohio's work force. Medical service providers, including chiropractors, submit claims to BWC and receive reimbursement from it through intermediaries called Managed Care organizations (MCCOs). BWC and the MCOs are federal health benefit programs within the meaning of 18 U.S.C. § 24(b), 1035 and 1347.

(1:06 CR 196)

> Private health insurance plans also are federal health benefit programs within the meaning of 18 U.S.C. § 24(b), 1035 and 1347. In order to receive reimbursement from such plans, the provider submits a claim to the plan.
>
> Health care benefit programs pay providers, including chiropractors, on the basis of reasonable charges for covered services provided to beneficiaries. Health care benefit programs pay, and providers agree to bill, only for services that are actually rendered, that are medically necessary to diagnose and treat illness or injury, and for which the provider maintains adequate supporting documentation, e.g., physician orders, progress notes, operative reports and test results.
>
> This case was opened based on information provided by the National Insurance Crime Bureau (NICB) on behalf of State Farm Insurance, who expressed concerns with billings generated by the defendant, a Chiropractor in Cleveland, Ohio.
>
> Reviewed claims indicated a high level office evaluation, utilization and prolonged physician service charge, and utilization of neuromuscular re-education on almost every visit. Additionally, the claims indicated utilization of physical therapy evaluation and physical therapy re-evaluation on the same days the bills reflect a high level evaluation.

Paragraph 15 of the presentence report states that the federal health benefit programs suffered a loss of $120,000 and the victim impact statement from Anthem Blue Cross and Blue Shield reported a loss of $7,307.51.

The defendant's statement in support of acceptance of responsibility states as follows:

> On July 25, 2006, the defendant was interviewed, in the presence of defense counsel, and submitted the following written statement, which is included verbatim:
>
> *"From November 2001 through March 2005, in the Northern District of Ohio, Eastern Division, and elsewhere, I knowingly and willfully claimed payment from federal health care benefit programs for chiropractic services, representing that I had*

3

(1:06 CR 196)

> *performed those services, when in fact I performed fewer services, less expensive services, undocumented services, and services that were reimbursable, it* [sic] *at all, at lesser rates.*
>
> *"I am sorry for the pain I caused my family, friends, and patients. I apologize for my unlawful conduct and will never again commit another criminal offense so long as I live. During the pendency of this criminal matter, I sought the treatment of mental health professionals. Those professionals have told me that I suffer from a severe executive and attentional deficit which impairs my judgment, insight, and for a critical appraisal of my actions and their consequences. Additionally, those professionals have indicated that my cognitive defects impaired my ability to use proper billing codes and impaired my ability to properly document my chiropractic services."*

The defendant was born on May 15, 1959 to a marital union that remains intact. The defendant was married on March 17, 2000 and the marriage remains intact with one child, age two. His wife is a psychiatrist who has a full time practice in New York City.

The defendant's physical condition is described in paragraph 41-43 and his mental and emotional health is described in paragraphs 44-52.

> The defendant reports that he is under the care of Dr. A. Klugger for Hypopituitarism, which is the result of losing the function of his pituitary gland after surgery in 1973. He indicates that he was diagnosed with Craniophayngioma during this time and underwent surgery to remove a brain tumor. This condition was diagnosed when the defendant lost vision in his left eye when he was 13 years old.
>
> Due to the surgery, he now has permanent endocrine deficits that requires him to take the supplementary hormones. He takes the following medications: Synthroid, Prednisone, DDAVP (anti-diuretic), Androgel, Humatrope, and Crestor. Additionally, he takes Celebrex, Adderall, Antivan and Albuteral on an as needed basis.

4

(1:06 CR 196)

>He was unable to completely explain his medical condition. According to defense counsel, he was unable to explain due to his diagnosed cognitive executive disorder.
>
>In March 2005, the defendant was diagnosed with Cognitive Executive Disorder and Attention Deficit Syndrome by Dr. David Printz, 30 West 70th Street, Ste. 1A, New York, New York. The defendant indicates that the Cognitive Executive Disorder was caused by his medical conditions, while the Attention Deficit Syndrome is a form of Attention Deficit Disorder.
>
>Defense counsel asserts that the defendant was diagnosed with cognitive disorder after neuropsychological testing and confirmed by psychiatric evaluation. This disorder was caused by his medical condition and likely have predisposing deficits which further exacerbate it. Additionally, he indicates he was diagnosed with anxiety.
>
>At the request of defense counsel, Dr. Phillip J. Resnick performed a psychiatric evaluation to determine what role, if any, psychiatric factors played in the allegations of incorrect billing and documentation. The evaluation notes that the defendant had trouble writing correct information during his clinical clerkships, while in the chiropractic school, and was repeatedly told that his charts were unsatisfactory due to his failure to document.
>
>Additionally, it notes that the defendant had to continually re-do his charts because of omissions and took longer to complete his clinical rotations due to poor charting.
>
>During his practice in New York and New Jersey, the defendant was not particularly aware of requirements for documentation and documented notes in the chart primarily for himself to remember what he did the previous time. In New Jersey, he was on a single health insurance panel which provided forms and a representative to help him fill it out. When he was in doubt, he would call the insurance company for advice.
>
>When he started working in Cleveland, he tried hiring a receptionist to do his billing. However, the receptionist stated that she was unable to bill because the defendant "was too disorganized" and he let her go.

5

(1:06 CR 196)

> The defendant acknowledged that he had some problems with documentation due to his bills not being paid because of inadequate documentation. He had some claims rejected due to insufficient documentation to show medical necessity and bought templates for documentation. However, he found them difficult to use and went back to writing his procedures on plaint [sic] paper in his charts.
>
> On March 22, 2005, a neuropsychological evaluation was completed by Elkhonon Goldberg, Ph.D. who belives that the defendant's executive and attentional impairment is of sufficient severity to render him disorganized, indecisive, slow to grasp the meaning and ramifications of any new set of circumstances and haphazard, bordering on chaotic, in most aspects of his professional and personal life.
>
> It is Dr. Goldberg's opinion that the defendant's flawed billing practices were a reflection of his executive deficit secondary to brain damage, rather than of calculated criminal intent.

The defendant has been self-employed as a chiropractor for 12 years.

**(2)  The Need for the Sentence Imposed**

**(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

Health care fraud is a serious offense, given the extent to which health plans that pay benefits depends on the integrity of the doctors, medical practitioners, hospitals and chiropractors who bill the system. A sentence that does not provide for some incarceration would fail to promote respect for the law and provide just punishment. However, the Court finds that a lengthy sentence of incarceration is not necessary under the circumstances of this case to promote respect for the law and to provide just punishment for the offense.

**(B)  to afford adequate deterrence to criminal conduct;**

6

(1:06 CR 196)

At the sentencing hearing, counsel for the defendant delivered a check to the Clerk of Courts in the sum of $65,000.00. Counsel also argued for a sentence limited to home detention. The Court indicated during the sentencing hearing that some period of incarceration was necessary, even against the background of the defendant's diminished capacity. Consequently, the Court imposed a sentence of 30 days of incarceration to be followed by five months of home detention with work release privileges. Under the circumstances of this case, the Court is of the view that the above-described sentence constitutes adequate deterrence to criminal conduct.

**(C)  to protect the public from further crimes of the defendant;**

The Court is of the view that the defendant will not engage in further crimes.

**(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

The defendant does not need additional educational or vocational training or other correctional treatment.

## CONCLUSION

For the reasons set forth herein, a sentence of 30 days incarceration to be followed by five months of home detention as a condition of supervised release for a period of two years, coupled with an order of restitution in the sum of $67,912.91 is within the advisory guideline range and is

(1:06 CR 196)

a sentence sufficient, but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a)(2).

    IT IS SO ORDERED.

| | |
|---|---|
| _December 20, 2006_ | _/s/ David D. Dowd, Jr._ |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |